## MORENO *v.* MARTINEZ.

APELACIÓN procedente de la Córte Distrito de Mayagüez.

No. 19.—Resuelto en Noviembre 23, 1904.

CONFUSIÓN DE DERECHOS—ACREEDOR Y DEUDOR—EXTINCIÓN DE LA DEUDA.—Una de las causas de la extinción de las obligaciones es la *confusión,* la que tiene lugar cuando se reunen en una misma persona los conceptos de acreedor y de deudor.

ID.—ANOTACIÓN DE EMBARGO—ADJUDICACIÓN—DESAHUCIO.—Anotado preventivamente un embargo en el Registro de la Propiedad, con posterioridad á una hipoteca, y extinguida ésta por confusión, queda la finca embargada afecta á las responsabilidades que garantiza dicho embargo, y adjudicada la finca embargada al acreedor ejecutante esa adjudicación constituye título suficiente para entablar con éxito la acción de desahucio contra el poseedor del inmueble.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Martinez (Victor P.).*

Abogado del apelado: *Sr. Ramirez Arrillaga.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del Tribunal.

El presente es un caso de desahucio. Una extensión de terremo conteniendo cincuenta y cuatro cuerdas pertenecía á J. J. Moreno, hermano del demandante, quien la hipotecó al demandado por cierta suma de dinero. Después le adeudaba al demandante la suma de ($2,000) dos mil dollars, y dió pagarés por la misma. El demandante embargó la finca, inscribió dicho embargo y notificó al demandado. Más tarde

J. J. Moreno vendió la finca al demandado en pago de la deuda hipotecaria y de otra que no estaba garantizada.   El demandante procedió á la ejecución del embargo y en la tercera venta la finca se le remató por la deuda, intereses y costas. Después de varias mociones que fueron presentadas sin éxito alguno y de haberse establecido pleitos por Martinez, la Sra. Moreno estableció esta acción de desahucio exponiendo los hechos.   Martinez contestó haciendo un esfuerzo para cancelar su hipoteca ó para restablecer el pleito al estado en que se hallaba antes de que los procedimientos de embargo empezasen.

Durante la vista, la Corte, por decisión unánime, después de referir los hechos, expone consideraciones de derecho al efecto siguiente:

Primero.—Que según el art. 1562 del Código de Enjuiciamiento Civil el demandante podía sostener la acción de desahucio.

Segundo.—Que esta acción puede establecerse contra cualquier persona que se encuentre en posesión después de habersele notificado con un mes de antelación, de acuerdo con el art. 1563, par. 3. del Cod. de Ejuiciamiento Civil.

Tercero.—Que la confusión de título es objeto de la extinción de una obligación, por confundirse en una persona los dos títulos el del deudor y el del acreedor; y el presente caso la hipoteca dada sobre la finca en cuestión, por el Sr. Moreno, á favor del Sr. Martinez, queda cancelada por confusión, quedando vigentes las cargas posteriores.

Cuarto.—Que una vez cancelada la hipoteca de Martinez éste perdió el derecho de su crédito, y el embargo quedó subsistente contra la finca traspasada por Joaquín J. Moreno á su acreedor Victor Martinez.

Quinto.—Que seguido por todos sus trámites el procedimiento de apremio de la Sra. Moreno contra el D. Joaquín J. Moreno, adjudicada la finca y dada posesión judicial á dicha señora adquirió el derecho de desahuciar á quien tuvo hipote-

cadas las fincas, quién por no pagar merced, ni tener otro título, debe considerarse como tenedor en precario, según sentencia del Tribunal Supremo de España de 16 de Noviembre de 1885 y 30 de Junio de 1887.

Sexto.—Que si es cierto que hallándose una persona en posesión, en la capacidad de dueño, tiene á su favor las presunciones legales de que él tiene posesión con buen título y no está obligado á mostrarlo, este precepto no es aplicable al caso que se presenta á nuestra consideración, puesto que en este caso no hay cuestión de título á la propiedad, y que el derecho del demandante, por el cual el demandado ha sido desposeido, nada tiene que ver con aquél título.

La Corte en efecto dictó sentencia á favor del demandante y ordenó que el demandado debería salir de la propiedad en el término de 20 días, y que si así no lo hiciese, seria expulsado de ella por la fuerza, con la imposición de las costas del procedimiento.

El demandado apeló de esta sentencia á esta Corte Suprema en donde ambas partes estuvieron representadas por sus respectivos abogados, el 7 de Octubre, quienes hicieron sus alegaciones verbales y presentaron sus alegatos por escrito, los que forman parte de los autos. El abogado del apelante, refiriéndose á las autoridades, presenta los siguientes puntos á saber:

A.—Sostiene que esta Corte es de apelación y no de casación y en sus deliberaciones y decisiones en todas las materias, no está limitada únicamente á las infracciónes de ley ó de quebrantamiento de forma, según se ha dicho por los litigantes, sino que puede tomar en consideración todos los hchos y procedimientos de la causa, según aparecen de los autos, tomando en consideración cada uno, según sus méritos para la mejor administración de la justicia, y del derecho, y para evitar la injusticia y la demora. En apoyo de esta proposición él hace referencia á la ley de la Asamblea Legislativa aprobada en 12 de Marzo de 1903.

B.—Manifiesta que hay presentados varios puntos de derecho y de hecho, que caen dentro de la letra y espíritu de la ley concerniente á Apelaciones, y cita los siguientes hechos:—

C.—Por escritura librada el 4 de Diciembre de 1890, Joaquín Moreno Sebollero, hipotecó la propiedad descrita á favor de Victor Martinez, y por escritura de adjudicación, fechada 1 de Febrero de 1900, é inscrita en el Registro de la Propiedad, Joaquín Moreno, en pago de la hipoteca é intereses, entregó dicha finca á Victor Martinez, padre del Letrado, sin que éste último haya entregado al predicho Joaquín Moreno ninguna cancelación, recibo, ó carta de pago de alguna clase, ni dado consentimiento expreso, según aparece de dicho escrito. Él declara que el demandante y la Corte sentenciadora, contra la cual se ha establecido esta apelación, demuestran que por virtud del referido escrito la hipoteca fué cancelada por confusión. Dice que aquí descansan los puntos más importantes del pleito. Define la palabra *confusión* como desorden, etc., citando la página 207 del Diccionario de la Lengua Española, y expone que la palabra ha sido usada incorrectamente en la sentencia.

D.—Expone que las obligaciones pueden *extinguirse;* por confusión de los derechos del deudor y del acreedor, y cita el art. 1124 del Código Civil, en apoyo de esta declaración; que una deuda no puede considerarse *satisfecha* sin que la cosa haya sido completamente entregada, ó prestada la cosa en que la obligación consista, citando el artículo 1125 del Código Civil; también el artículo 1138 del mismo Código; que Joaquin J. Moreno convino en pagar dinero, y que él no lo ha hecho así, y que después de leer estos artículos, no puede existir duda alguna de que la deuda hipotecaria no fué pagada, y por consiguiente la misma no podía haber sido cancelada.

E.—Expone que Joaquín Moreno recibió de Victor Martinez cierta suma de dinero que había de pagarse con sus intereses en cierta fecha, la cuál siguió debiendo hasta la fecha

de la referida escritura de adjudicación; que él entregó las
fincas porque el crédito ascendía á más del valor de las mis-
mas, y no pagó el dinero, por lo que Martinez no podía darle
una carta de pago ó cancelación de hipoteca   Está de acuerdo
con la ley y la justicia que no habiendo Moreno pagado
el dinero sino propiedades en su lugar y no habiendo sido *ex-*
*tinguida* la deuda hasta que la misma sea *pagada* en conjunto
no puede ésta considerarse como *satisfecha,* y por lo tanto
existen aun la deuda y la hipoteca.   Esta opinión, alega él,
está justificada de acuerdo con los preceptos del Código Civil.

F.—Sostiene que si la misma cuestión es considerada de
acuerdo con la Ley Hipotecaria, se llega á la misma conclu-
sión, ó sea que la deuda y la hipoteca existen todavía, no
habiendo sido cancelada la última.

Cita lo siguiente de la Ley Hipotecaria:

"Artículo 82.—Las inscripciones no pueden ser canceladas por
escrituras públicas, excepto con el consentimiento expreso de las
partes."

"149.—Las inscripciones de hipotecas pueden ser canceladas úni-
camente en la forma indicada en el artículo 82."

Él declara que de acuerdo con lo expuesto anteriormente,
el consentimiento expreso del acreedor hipotecario era nece-
sario para la cancelación de la hipoteca, y no habiendo dado
dicho consentimiento, la hipoteca no podía ser cancelada;
citando las decisiones del Registro de la Propiedad de Madrid;
5 de Febrero de 1896 y 5 de Mayo de 1896: T. de J. 1894 al
1897, folios 64 y 65.

G.—Además, la Sra. Moreno y la sentencia de la Corte
inferior muestran que su ejecución por la cual la finca le fué
adjudicada á ella en vista de que su crédito era de una fecha
posterior á la de la Hipoteca de Martinez.—Citando el artículo
44 de la Ley Hipotecaria, continúa y dice que Joaquin Moreno
hipotecó la propiedad el 4 de Diciembre de 1890 á Martínez
y la Sra. Moreno presentó el embargo en el Registro de la

Propiedad el 30 de Marzo de 1898, habiendo sido ejecutada la hipoteca siete años antes á dicha entrada, y por consiguiente, de acuerdo con el artículo citado, ella no puede perjudicar á la hipoteca: citando sentencias de la Suprema Corte de Madrid, de 1 de Febrero de 1896 y de 28 de Octubre de 1895.

H.—Sostiene que el embargo y su entrada en el Registro de la Propiedad según se ha dicho no debieran tomarse en consideración con relación á las fincas hipotecadas á Martínez, citando el artículo 125 de la Ley Hipotecaria, en relación con el párrafo 2 del artículo 79 que dice que puede tenerse una cancelación cuando el derecho inscrito está completamente extinguido. Él cita el artículo 167 de la Ley Hipotecaria en apoyo de esto, y dice que el mismo está confirmado por las sentencias de la Corte Suprema de España, de fecha 1 de Febrero de 1898, etc. Todo lo cual, dice él, está de acuerdo con el artículo 33 de la Ley Hipotecaria.

I.—Sostiene que en vista del hecho de que la deuda no ha sido satisfecha, y que la hipoteca no podía ser cancelada, la inscripción del embargo de la Sra. Moreno no puede ser tomada en consideración, y que el único título válido para la propiedad lo tiene Victor Martinez.

J.—Entonces presenta la cuestión de la verdadera posesión de la propiedad, manifestando que Martinez está en posesión y reclama ser el legítimo dueño de ella, citando partes de las providencias y decretos de la Corte inferior, citando además el artículo 443 del Código Civil, que ordena que en ningun caso puede la posesión ser forzosa, mientras haya una parte en posesión que se oponga á la misma. Citando el artículo 433 del Código Civil con respecto á posesión.

K.—El abogado continúa y dice que Doña Maria Moreno no ha podido adquirir la posesión de dichas fincas, porque la posesión es un acto voluntario y que la misma no puede tenerse por el ejercicio de la fuerza. Pero suponiendo, dice el abogado, que Doña María Moreno hubiera tomado posesión lo mismo que Victor Martínez como quiera que

la posesión no puede ser reconocida en dos partes distintas de la misma propiedad, tendría que dársele preferencia al poseedor actual, siendo en el presente caso el Sr. Victor Martinez. Además, el acta de posesión de la Sra. Moreno data de Mayo 6, 1902, mientras que la de Martinez favorece el hecho de una posesión más larga. El Letrado cita el artículo 445 del Código Civil antiguo, y cita el 447 del vigente Código en apoyo de su argumento.

L.—La Sra. Moreno, y con ella la sentencia de la corte inferior, contra la cual se ha establecido esta apelación, declaran que Martinez posee dicha finca precariamente, lo que según el Letrado es un error serio. "Precario" dice, según lo define el diccionario de la Lengua Española, es una cosa retenida como en préstamo, y con el consentimiento de su dueño. Él cita al señor Manresa en sus comentarios sobre Procedimiento Civil.

M.—El Letrado expone que necesita muy poco esfuerzo para demostrar á la Corte que Victor Martinez no ocupa las referidas tierras "en precario." Continúa y dice que la Sra. Moreno no puede probar que Victor Martínez está en posesión de la propiedad con permiso del dueño pero sin pagar renta alguna ó en la forma de un préstamo gratuito, sino por el contrario que Victor Martinez ha probado hasta la evidencia que él es el legítimo dueño por virtud de un título ejecutado por Joaquin Moreno.

N.—Manifiesta el Letrado que la Corte sentenciadora muestra en apoyo de su acción las sentencias de la Corte Suprema de España de 16 de Noviembre, 1885, y 30 de Junio de 1887, pero asevera que éstas no son aplicables al presente caso; en primer lugar porque se refiere á una expulsión por un acreedor, mientras que en el presente caso el demandado no es acreedor ni deudor; y la segunda se refiere al poseedor de una propiedad *en precario*.

O.—Finalmente el Letrado se refiere á varios fallos de la Corte Suprema de España, entre otros los de 28 de Abril de 1892 y 4 de Enero de 1900; y declara además:

P.—Que el demandante no está en posesión de la finca en cuestión; que el verdadero dueño y persona en posesión es su defendido; que éste no retiene dicha propiedad en precario, sino por virtud de un título legítimo; que en vista de todo lo expuesto, la sentencia contra la cual se ha establecido esta apelación, debía ser revocada, y las costas y perjuicios impuestos á la parte contraria.

El abogado del apelado presenta concisamente los siguientes puntos de hecho y de derecho:

*Primero.*—En el juicio ejecutivo que siguió mi representada contra Don Joaquin Moreno se le embargó una finca rústica, que posteriormente vendió á Don Victor Martinez y requerido éste para que pagara en importe de la anotación del embargo, como no lo verificara, se procedió á la subasta de la finca, y por falta de postores se adjudicó á mi representada por la cantidad reclamada, intereses y costas.

*Segundo.*—Pedida la posesión judicial por mi poderdante, se le dió por el Juzgado Municipal de San Sebastian, obrando por delegación de la Corte de Distrito de Mayagüez, pero á pesar de tal posesión Don Victor Martinez no desocupó la finca y continuó aprovechándose de las cosechas de café, como si hubiera sido su dueño, cuando no lo era, porque también se canceló la inscripción del dominio de la finca que tenía en el Registro de la Propiedad.

*Tercero.*—En tal estado las cosas, y en vista de la temeridad de Don Victor Martinez en no querer desocupar la finca, fué requerido con un mes de anticipación para que la desocupase, puesto que venía poseyendola, á titulo de precario, sin pagar merced, alguna, y como dentro del mes no la desocupó, le entabló mi representada esta demanda de desachucio á la que tenazmente se opuso Don Victor Martinez.

*Cuarto.*—He traido á los autos como pruebas copia autentica del embargo de la finca, de la anotación de ese embargo en el Registro de la Propiedad, del requerimiento que se hizo á Don Victor Martinez para que pagase el importe de la ano-

tación, de la adjudicación de la finca á mi representada, de la cancelación de la inscripción de donminio de Don Victor Martinez y de la inscripción de la finca que se verificó á favor de mi representada.

*Quinto.*—Y he de llamar la atención especialmente á esta Corte, acerca de que el Sr. Martínez presentó en autos como prueba la copia de la escritura de la finca inscrita á su favor en el Registro de la Propiedad; pero esa inscripción es la misma que se canceló por orden de la Corte de Distrito de Mayagüez, por lo que no existe tal inscripción á su nombre, y sí existe la inscripción á nombre de mi representada.

*Sexto.*—El que se encuentre en el caso de Don Victor Martínez, se entiende poseedor á precario, según varias sentencias del Tribunal Supremo de España y también de este Hon. Tribunal y por tanto suplico se sirva confirmar el fallo de la Corte de Distrito de Mayagüez, con las costas á la parte apelante.

*Hechos.*—(1).—Don José Joaquín Moreno constituyó hipoteca voluntaria á favor de Don Victor Martínez para responderle de una suma que le debía, sobre la finca siguiente: Un cuerpo de terreno sembrado de café, caña y pastos 54 cuerdas 47 cents—equivalentes á 21 hectareas, 40 áreas y 80 centiáreas, situada en el barrio de Guatemala, partido Municipal de San Sebastian colindando por el Norte con terrenos de José Santos Hernández y Praxedes Sarraño; por el Este con Doña Rita y Maria Moreno y Cebollero; por el Sur con Manuel Antonio Gimenez y Monserrate Cebollero y por el Oeste con José Santos Hernandez con inclusión de dos-terceras de la casa habitación y establecimientos, cuya hipoteca fué inscrita en el Registro de la Propiedad de Aguadilla.

(2).—Posteriormente siguió ejecución mi representada contra Don José Joaquín Moreno en cobro de un crédito de $2,000 provinciales, intereses y costas, habiéndosele embargado la finca descrita y cuyo embargo se anotó en el Registro de la Propiedad de Aguadilla.

(3).—Después de anotado el embargo, por escritura ante el Notario Don Mariano Riera Palmer el 1 de Febrero de 1900 Don José Joaquín Moreno vendió y dió en pago á Don Victor Martínez la finca hipotecada, en pago de su crédito hipotecario y de otro común, por cuyo motivo se canceló por confusión de dicho crédito hipotecario, y quedó vigente como única carga, la anotación del embargo referido.

(4.)—Notificado Don Victor Martinez como comprador de la finca y comprendido por tanto en el Art. 71 de la Ley Hipotecaria, desde que aquella se iba á subastar, por si quería librarla en el término de 10 dias, pagando la cantidad importe de la anotación, solicitó reposición de la providencia de 13 de Agosto de 1900 que decretó tal requerimiento y después de tramitada en forma, le fué denegada por auto de 30 de Septiembre del mismo año que quedó firme.

(5).—No habiendo Don Victor Martinez librado la finca, continuó el procedimiento de apremio y después de tres subastas desiertas, se adjudicó á mi mandante por principal, intereses y costas por auto de 12 de Noviembre de 1902—requiriendose á Don Victor Martinez para reconocer á mi mandante como tal poseedora y por auto de 1º de Mayo, 1902, se mandó cancelar la inscripción de dominio de la finca á nombre de Martinez.

(6).—A pesar de la posesión judicial dada á mi mandante, Don Victor Martinez ha continuado en la finca ocupando la casa que enclava por medio de su encargado Don Honorio Ziordia de cuya casa dos terceras partes con las dos terceras de los establecimientos fueron subastados con la finca rústica y adjudicados también á mi principal y posesionada esta de ellos judicialmente la otra parte por otro concepto á poderdante.

(7).—Posteriormente Don Victor Martinez, después de perder varios pleitos referentes al asunto, estableció un declarativo contra José Joaquín Moreno y mi representada, in-

teresando la mitad de la escritura de adjudicación de 1 de Febrero de 1900.

(8).—Victor Martinez fué requerido por el Juez Municipal de Mayagüez para desalojar las fincas que ocupa en precario el 1 de Febrero.

*Derecho.*—(1).—Adjudicada una finca al ejecutante y puesto en posesión de ella, queda trasmitida la propiedad á su favor.

(2).—Son partes legítimas para promover el desahucio, los que tengan la posesión real á título de dueño, de usufructuario ó cualquier otro que les dé derecho á disfrutarla y sus causahabientes (art. 1562, Ley de Enjuiciamiento Civil).

3.—Procede el desahucio contra cualquier persona que disfrute ó tenga en precario la finca, ya sea rústica ó urbana, sin pagar merced, siempre que fuere requerido con un mes de anticipación para que la desocupe. (Art. 1563, No. 3.—Ley de Enjuiciamiento Civil.

(4.)—Según sentencia del Tribunal Supremo de España fecha 16 de Febrero de 1885 y 30 de Junio de 1887, el acta de adjudicación de la finca determina la posesión civil y real del predio, quedándole al dueño la acción de desahucio contra quien la tiene hipotecada el cual por no pagar merced, ni ostentar otro título, solo tiene el caracter de tenedor en precario, sentencia aplicable al presente caso.

Si se declarara la nulidad de la escritura de adjudicación de 1 de Marzo de 1900 cedida por Don Victor Martinez, más motivos existirían para la procedencia del desahucio, toda vez que entonces ni aun tendría el título á su favor que invoca en la contestación que dió el requerimiento que se le hizo por el Juzgado Municipal, título que por otra parte no podría invocar, por estar atacado de nulidad por él mismo y porque aunque resulte válido, sería ineficaz para él, por haberse trasmitido la propiedad de la finca á mi poderdante, en virtud de no haber cumplido el Sr. Martínez con lo que prescribe el Artículo 71 de la Ley Hipotecaria, dando lugar ello á la

subasta de la finca y adjudicación á mi mandante y posesión judicial.

Estos son los argumentos de los respectivos Letrados presentados sustancialmente en sus propias palabras según aparacen en el memorandum agregado á los autos. Veámoslos brevemente.

El abogado del apelante parece equivocar el significado legal de la palabra "confusión" la que, según el Diccionario Legal de Bouvier es definida "La absorción de cualidades del deudor y acreedor en una misma persona." Véase 1, Bouvier p. 396. Estas definiciones son tomadas de la ley civil y no puede haber duda de que cuando el apelante compró la propiedad á su deudor y pasó á ser amo de ella, su hipoteca fué fundida en la propiedad y por consiguiente fué extinguida. Es verdad que no fué *pagada* sino *extinguida* por la absorción, y no existe lo mismo que si hubiere sido pagada, ó lo mismo que si nunca hubiera sido ejecutada. Habiéndose extinguido la hipoteca, el embargo del apelante quedó en completa vigencia, y pasó á ser efectivo con respecto á la propiedad reclamada por el demandado y por él ocupada, y la corte inferior decidió de conformidad que el demandante tenía derecho á la posesión.

Aparece de todas las investigaciones hechas de los autos, y de los informes de los abogados agregados á los mismos, así como de las alegaciones verbales hechas ante la corte, que el fallo de la Corte inferior es correcto en todos sus detalles, y por lo tanto debe confirmarse.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados Hernández, Figueras y Wolf.